UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Evan Maurer,                                                  Civil No. 06-1248 (PAM/RLE)

                Plaintiff,

v.                                                         **MEMORANDUM AND ORDER**

Sun Life Assurance Company
of Canada,

                Defendant.

_____

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**BACKGROUND**

Plaintiff Dr. Evan Maurer was director of the Minneapolis Institute of Arts ("MIA") for more than 10 years. In 2004, Maurer's chronic health problems led him to conclude that he could not continue in his position. In late October 2004, Maurer made a claim under the group long-term disability policy for MIA employees maintained through Defendant Sun Life Assurance Company of Canada ("Sun Life"). The monthly maximum benefit under the policy was $13,000. Maurer's monthly salary at MIA was more than $25,000.

Because of the disparity between the policy limits and Maurer's actual income, Maurer and MIA discussed a separation agreement to supplement Maurer's disability benefits. Maurer and MIA signed the final version of this agreement, called the Executive Employment and Deferred Compensation Agreement (the "Agreement"), on March 15, 2005.

Under the heading "Retirement Income Supplement," the Agreement provided that MIA would pay Maurer $12,750 per month as "additional deferred compensation," (2d Am. Exec. Agrmt. at ¶ 3(a).) As Sun Life notes, a previous iteration of the Agreement characterized the monthly benefit as "severance pay" (Jan. 11, 2005, Agreement at ¶ 3(a)), although the first draft of the Agreement calls the payments "additional deferred compensation" (Nov. 19, 2004, Draft Agreement at ¶ 3(a)). In his submissions to the Court, Maurer now characterizes the payments as "salary continuation." There appears to be no real dispute that the payments were not "deferred compensation" as that term is traditionally understood, that is, compensation earned but not paid until later.

On April 5, 2005, Sun Life denied Maurer's claim for benefits, finding that he was not disabled under the policy. The denial letter quoted the Agreement's deferred-compensation provision but did not mention this provision as possible grounds for an offset of benefits. Indeed, although the letter mentions a possible offset, the possibility is raised only with respect to the salary Maurer received from the onset of his alleged disability to the time of his retirement from MIA on February 28, 2005, and with respect to any "retirement benefits or Social Security Benefits received." (Apr. 5, 2005, letter from Sun Life to Maurer, at 11.)

Maurer appealed the determination and submitted additional medical information to Sun Life to support his claim for disability benefits. In December 2005, Sun Life informed Maurer that it required more time to evaluate his appeal. Despite this additional time, Sun Life did not complete its evaluation within the time permitted under federal law. In March

2006, Maurer instituted this lawsuit.

On September 19, 2006, Sun Life issued its decision on Maurer's appeal. It first found that Maurer met the definition of total disability in the policy and was therefore entitled to long-term disability benefits. Sun Life then determined that the policy benefits would be offset by the monthly payment Maurer was receiving from MIA. In other words, Sun Life determined that Maurer was entitled only to $250 per month in long-term disability benefits.

At the same time, the Court ordered the parties into settlement talks. In furtherance of these discussions, Maurer's attorney sent a letter to Sun Life explaining that Maurer and MIA intended the payments under the Agreement to be in addition to, and not in place of, the benefits available under the policy. Sun Life construed this letter as an appeal, which it denied in July 2007. The instant Motions followed.

There is no dispute that Maurer meets the definition of disability under the policy and is therefore entitled to disability benefits. The only dispute is whether the payments pursuant to the Agreement between MIA and Maurer should be set off against policy benefits. The policy contemplates that some income, defined in the policy as "Other Income Benefits," will be set off against available policy payments. "Other Income Benefits" are "those benefits provided or available to the Employee while a Long Term Disability Benefit is payable." (Sun Life Pol'y No. 67769, § IV, p. 15 (hereinafter the "Policy").) As relevant to these Motions, such benefits include:

> 3.  Any labor management trustee, union, or employee benefit plans that are funded in whole or in part by the Employer.

3

* * *

5. The benefits the Employee receives under his Employer's Retirement Plan as follows:
a. any disability benefits;
b. the Employer-paid portion of any retirement benefits. (Disability benefits that reduce the Employee's accrued retirement benefit will be treated as a retirement benefit. Retirement benefits do not include any amount rolled over or transferred to any other retirement plan as defined in Section 402 of the Internal Revenue Code.)

* * *

8. Any salary continuation paid to the Employee by his Employer which causes the Net Monthly Benefit, plus Other Income Benefits and any salary continuation to exceed 100% of the Employee's Total Monthly Earnings . . . .

* * *

10. Any amount the Employee receives from a voluntary separation employment agreement from the Employer including severance pay or any other income in settlement of an employee contract.

(Id. at 15-16.) Sun Life ultimately determined that the payments pursuant to the Agreement constituted Other Income Benefits under the policy. Maurer argues that the payments are salary continuation not subject to offset because the payments and the policy benefits do not exceed 100% of his monthly earnings at MIA.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court

must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Merits**

There is no dispute that the disability insurance policy at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The threshold issue in this case is what standard of review applies to Sun Life's decision to offset Agreement payments against policy benefits.

Because the policy gives Sun Life discretion to determine benefits and interpret policy terms, the Court presumes that it may review Sun Life's decisions only under an abuse-of-discretion standard. Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). Maurer argues that the Court should apply a de novo standard because Sun Life failed

to actually exercise its discretion by making a reasoned review of his claim. See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 329 F.3d 1098, 1106-07 (9th Cir. 2003). In essence, Maurer claims that Sun Life's delay in responding to his initial appeal meant that his claim was "deemed denied" and that Sun Life failed to review it. He also argues that Sun Life did not independently review his claim, but instead relied wholly on opinions of outside experts.

Maurer relies heavily on the Eighth Circuit Court of Appeals' decision in Seman v. FMC Corp. Retirement Plan, 334 F.3d 728 (8th Cir. 2003) to support his argument that Sun Life's tardy determination is not entitled to deferential abuse-of-discretion review. In Seman, the insurer initially denied the employee's application for disability benefits, finding that he was not disabled. Id., 334 F.3d at 731. The employee appealed the decision, submitting new evidence. The insurer did not respond to the appeal, and after 18 months the employee filed suit in federal court claiming wrongful denial of benefits. Id. The appellate court found that the insurer's failure to render a decision on the employee's appeal meant that the insurer was entitled only to de novo review. Id. at 733. The court reasoned that the failure to issue a decision after the employee submitted new evidence raised "serious doubts about the result reached" by the insurer, thus requiring a less-deferential standard of review. Id.

The Eighth Circuit did not pronounce a hard-and-fast rule that all delays in decisions merit de novo review. In contrast to the facts in Seman, in this case Sun Life communicated with Maurer during the decisionmaking process and eventually issued a decision. The mere fact that the decision was tardy does not, by itself, warrant this Court's application of de novo

review.

Nor is the Court convinced that Sun Life's reliance on outside experts' opinions warrants de novo review. If, as Maurer argues, Sun Life has a conflict of interest as the fiduciary and administrator of the policy, then almost by definition Sun Life can vitiate that conflict by employing independent experts to review claims. See, e.g., Woo v. Deluxe Corp., 144 F.3d 1157, 1161 (8th Cir. 1998) (finding conflicted fiduciary's failure to employ independent expert was "serious procedural irregularity" that mandated less-deferential review). The fact that Maurer disagrees with the experts' conclusions cannot change the fact that Sun Life discharged its fiduciary obligations in part by consulting with these experts.

However, even if the Court were to apply de novo review, Sun Life's determination to offset the Agreement payments against the policy payments is a reasonable determination of the policy language and is supported by a preponderance of evidence in the record. See Morgan v. UNUM Life Ins. Co. of Am., 346 F.3d 1173, 1177 (8th Cir. 2003) (holding under de novo standard, Court in ERISA action should uphold decision only if supported by "evidence bordering on a preponderance"). The evidence in the administrative record shows that Maurer and MIA consulted with their insurance agent regarding terms of the Agreement, and the insurance agent informed them that the term "severance pay" in the initial signed Agreement would fall within the policy's offset provisions. Thus, when amending the Agreement, Maurer and MIA chose the label "additional deferred compensation" specifically to avoid the offset provision, but did not otherwise substantively change the terms of the Agreement. Notably, the Agreement nowhere refers to these payments as "salary

7

continuation."

Sun Life is not bound by labels that MIA and Maurer chose for payments in the Agreement. The policy offsets "[a]ny amount the Employee receives from a voluntary separation employment agreement from the Employer including severance pay or any other income in settlement of an employee contract." (Policy § IV, at 16.) Sun Life's determinations that the Agreement constitutes a voluntary separation agreement and that the payments fall within the offset provisions are reasonable interpretations of the policy language and are supported by a preponderance of evidence in the record.

## CONCLUSION

Accordingly, and as set forth more fully above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Docket No. 18) is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment (Docket No. 22) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 2, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge